UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL R. FOLSOM, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 3:09-cv-094-RLY-WGH |
| | ) | |
| MENARD, INC.; CDI, INC.; LAMAR | ) | |
| CONSTRUCTION COMPANY; NORTH | ) | |
| AMERICAN ROOFING SERVICES, INC.; | ) | |
| FABCON, INC.; FABCON, LLC; CROWN | ) | |
| CONSTRUCTION, INC.; and GARY | ) | |
| PLUMBING SERVICES, INC., | ) | |
|     Defendants. | ) | |
| | ) | |
| CDI, INC. and MENARD, INC. | ) | |
|     Third Party Plaintiffs, | ) | |
| | ) | |
|   vs. | ) | |
| | ) | |
| REDDINGER CONSTRUCTORS, INC., | ) | |
|     Third-Party Defendant. | ) | |

**ENTRY ON REDDINGER CONSTRUCTORS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Third-Party Plaintiff, Reddinger Constructors, Inc. ("RCI"), moves for summary judgment against Defendants/Third-Party Plaintiffs CDI, Inc. ("CDI"), and Menard, Inc. ("Menard"). For the reasons set forth below, RCI's motion is **GRANTED**.

**I.  Background**

On July 15, 2009, Plaintiff, Michael R. Folsom ("Plaintiff"), filed a Complaint against CDI, Menard, and various subcontractors. Plaintiff alleges that CDI and the

1

remaining defendants breached a duty of care owed to Plaintiff during the construction of a Menard store in Princeton, Indiana (the "Project"). Because of this alleged breach, Plaintiff maintains he suffered severe personal injuries, including paraplegia, when a portion of a roof collapsed, under the weight of several inches of rain water, while he was performing construction services on the Project. (Complaint ¶¶ 20, 21, 26).

Menard hired CDI as a general contractor for the Project. (*Id*. ¶¶ 14-15). CDI hired RCI as a subcontractor to perform its electrical work. (CDI's Third Party Complaint ¶ 2). At the time of the alleged accident, Plaintiff was an employee of RCI. (*Id*.).

On March 18, 2010, following initial discovery, CDI filed its Third-Party Complaint against RCI, alleging that RCI "is obligated to indemnify and defend CDI for all losses, including attorney fees, attributable to bodily injury and caused in whole or in part by any negligent act of RCI or any of its employees, regardless of whether CDI was partially at fault for the loss." (*Id*. ¶ 5). CDI bases its assertion on Article 11.11 of its Subcontract with RCI, which states, in relevant part:

> To the fullest extent permitted by law, the Subcontractor expressly agrees to defend (at Subcontractor's expense and with counsel acceptable to the Contractor), indemnify and hold harmless the Owner, Contractor, . . . , and any other parties which the Contractor has agreed to indemnify as named or referenced in the project contract documents as attached to and made a part of this Subcontract . . . from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and (2) *is caused in whole or in part by any negligent act or omission of (Subcontractor) or any of its subcontractors, anyone directly or indirectly employed by any of them* or for anyone for

> whose acts any of them may be liable, regardless of whether it is caused in part by a party indemnified hereunder.

(*Id.*, Ex. A) (emphasis added). CDI alleges that Plaintiff "was at least partially at fault for the loss and injuries at issue due to his intoxication resulting from alcohol or other drugs at the time of the event, which prevented him from escaping unharmed, or with reduced harm." (*Id.* ¶ 6).

On November 23, 2010, Menard filed its Third-Party Complaint against RCI, alleging it is entitled to indemnity and a defense from RCI on the same grounds as those alleged by CDI. (Menard's Third-Party Complaint ¶ 3).

## II.   Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Factual disputes that are irrelevant or unnecessary to the claims before the court will not alone defeat a summary judgment motion. *Id.* at 247-48. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party.

*Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

### III.   Discussion

CDI's Third-Party Complaint seeks indemnity on three grounds:

(1)   "CDI asserts that RCI's employee, Michael Folsom, was at least partially at fault for the loss and injuries at issue due to his intoxication resulting from alcohol or other drugs at the time of the event, which prevented him from escaping unharmed, or with reduced harm.  Based on the negligence of Mr. Folsom, which is attributable to RCI under the contract, RCI is obligated to provide complete indemnity and defense to CDI in this matter . . . ."  (CDI's Third-Party Complaint ¶ 6).

(2)   "At the time of the accident at issue, RCI had in place a policy strictly forbidding its employees to work while any alcohol was in their system.  RCI negligently failed to supervise its employees which proximately caused Mr. Folsom to sustain his injuries . . . ."  (*Id*. ¶ 7).

(3)   "RCI also negligently failed to comply with safety measures as per Article 11.5.1 of the contract . . . ."  (*Id*. ¶ 8).

As noted above, Menard also filed a Third-Party Complaint, claiming RCI is liable to Menard based upon the same allegations raised in CDI's Third-Party Complaint.  Indeed, Menard's Third-Party Complaint reads, in relevant part: "To the extent the plaintiff's injuries were caused in whole or in part by RCI as alleged in CDI, Inc.'s third-party complaint against RCI and/or arose out of RCI's work[1] then they have exposed Menard, Inc. to liability and RCI is required to defend and indemnify Menard, Inc."  (Menard's Third-Party Complaint ¶ 3).

---

[1] To the extent that Menard's Third-Party Complaint alleges that Plaintiff's injuries "arose out of RCI's work," there is no evidence, beyond Menard's conclusory statements, to support this allegation.

4

### A. Plaintiff's Alleged Hearing Impairment

Following the accident at the Princeton Menard, the Deaconess Hospital Laboratory performed a blood toxicology test on Plaintiff. Based on the results of that test, CDI and Menard filed their respective Third-Party Complaints, alleging that Plaintiff was intoxicated or impaired at the time of the accident and that his alleged impairment contributed to his injury.

The results of the test, however, reflect that Plaintiff's blood alcohol concentration was less than 1MG/DL, which would be the equivalent of 0.001%. (Affidavit of Phillip Gamble ¶¶ 8, 11). A normal blood alcohol concentration is anything less than 10 MG/DL, or the equivalent of 0.01%. (*Id.* ¶¶ 9, 11). As a result, Plaintiff's blood alcohol concentration was well within the normal limit. (*Id.* ¶ 10).

In their Response Briefs, CDI and Menard concede that Plaintiff was not intoxicated at the time of the accident. Rather, they contend that Plaintiff was hearing impaired, that this impairment may have contributed to his injuries, and that RCI may have been negligent for failing to discover his hearing impairment.

As an initial matter, CDI's Third-Party Complaint makes no mention of Plaintiff's alleged hearing impairment. CDI cites to the notice pleading requirements of the federal pleading rules, and asks the court to interpret its Third-Party Complaint as asserting a claim for indemnification based on any act of negligence. (*See* CDI's Response at 10 ("[T]he reasonable interpretation of the [Third-Party Complaint] is that it sounds in negligence pursuant to the indemnification contract.")). The notice pleading rules are

designed to give the opposing party fair notice of asserted claims and the grounds upon which they rest. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). It would defy the requirement of fair notice to read into CDI's Third-Party Complaint a claim which simply is not there.

Even were this issue properly before the court, the claim would still fail on the merits. The primary allegation asserted by both CDI and Menards is that Plaintiff did not hear his co-worker, Timothy Chandley ("Chandley") yell "Run!" as the welds snapped from the weight of the rain water and the roof began to falter. (Deposition of Timothy Chandley ("Chandley Dep.") at 29, 47 (testifying that he did not think that Plaintiff heard him yell "Run!")). The indemnity language at issue provides that RCI is obligated to provide indemnity to CDI and Menard where an injury "is caused in whole or in part by any negligent act or omission of [RCI] or any of its Subcontractors, anyone directly or indirectly employed by any of them . . . ." (CDI's Third-Party Complaint, Ex. A at ¶ 11.11). CDI and Menard have failed to show how Plaintiff's alleged hearing impairment constitutes an "act or omission" on the part of Plaintiff or RCI.

Moreover, the undisputed evidence reflects that: (1) Plaintiff had no problem hearing Chandley that morning during a meeting in the trailer; (2) the Menard building was so loud that morning that they had to yell to hear each other "just to communicate"; (3) Plaintiff was standing fifteen feet away from Chandley at the time of the accident; and (4) as soon as Plaintiff heard the roof collapse, he ran. (Chandley Dep. at 29, 47; Deposition of Michael Folsom at 89-90, 95-96). Thus, even considering Chandley's

testimony that Plaintiff did not hear him yell "Run!," this evidence is not material to the issue of whether CDI and Menard are entitled to indemnity and a defense pursuant to Article 11.11 of CDI's Subcontract with RCI.

### B. RCI's Failure to Hold Training Sessions

CDI and Menard maintain that RCI's failure to hold training sessions about what to do in the event of a roof leak or collapse entitles them to indemnity. The Subcontract at issue requires the subcontractor (RCI) to "take all reasonable safety precautions with respect to [its] Work." (CDI's Third Party Complaint, Ex. A at § 11.5.1). RCI is an electrical contractor, not a roofing contractor. The likelihood that a roof would collapse due to inadequate drainage is not the type of eventuality that an electrical contractor would reasonably foresee as a safety concern. Accordingly, the court finds that RCI's failure to train its employees regarding the possibility of a roof collapse due to torrential rainfall is not a breach of the Subcontract, and does not support CDI's and Menard's claim for indemnity under the Subcontract.

## IV. Conclusion

For the reasons set forth above, the court finds no genuine issue of material fact exists as to CDI's and Menard's claims for indemnity and a defense from RCI based on the contributory negligence of Plaintiff, an RCI employee. Accordingly, the court must

**GRANT** RCI's Motion for Summary Judgment (Docket # 176).


**SO ORDERED** this 26th day of July 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Gerald F. Allega
STATHAM ALLEGA JESSEN & RUDISILL
saj@statham-aj.com

Bradley A. Bough
WRIGHT SHAGLEY & LOWERY
bbough@wslfirm.com

Jake A. Cilek
THE HUNT LAW GROUP LLC
jcilek@hunt-lawgroup.com

Kathleen A. Clark
DAWSON & CLARK, P.C.
kclark@dawson-clark.com

Aimee Rivera Cole
SMITH FISHER MAAS & HOWARD
arivera@smithfisher.com

Donald H. Dawson Jr
DAWSON & CLARK, P.C.
ddawson@dawson-clark.com

James L. Fischer Jr.
BOEHL STOPHER & GRAVES, LLP
jfischer@bsg-in.com

Danny E. Glass
FINE & HATFIELD
deg@fine-hatfield.com

Jeffrey W. Henning
RUDOLPH FINE PORTER & JOHNSON, LLP
jwh@rfpj.com

Brian J. Hunt
THE HUNT LAW GROUP LLC
bhunt@hunt-lawgroup.com

John J. Kreighbaum
FINE & HATFIELD
jjk@fine-hatfield.com

Marcum Jarvis Lloyd
SMITH FISHER MAAS & HOWARD P.C.
mlloyd@smithfisher.com

Rebecca Jean Maas
SMITH FISHER MAAS & HOWARD
rmaas@smithfisher.com

Curtis Paul Moutardier
BOEHL STOPHER & GRAVES LLP
cmoutardier@bsg-in.com

William Scott Trench
THE HUNT LAW GROUP LLC
strench@hunt-lawgroup.com

Scott Lee Tyler
Waters, Tyler, Scott, Hofmann & Doane, LLC
styler@wtshdlaw.com

Lindsay A. Watson
THE HUNT LAW GROUP, LLC
20 N. Wacker Drive, Suite 1711
Chicago, IL 60606

Robert L. Wright
WRIGHT SHAGLEY & LOWERY, P.C.
rwright@wslfirm.com