UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION


MICHAEL R. FOLSOM,                                   )
          Plaintiff,                                      )
                                                       )
        vs.                                              )                3:09-cv-094-RLY-WGH
                                                       )
MENARD, INC.; CDI, INC.; LAMAR          )
CONSTRUCTION COMPANY; NORTH      )
AMERICAN ROOFING SERVICES, INC.; )
FABCON, INC.; FABCON, LLC; CROWN )
CONSTRUCTION, INC.: and GARY          )
PLUMBING SERVICES, INC.,                    )
          Defendants.                                  )
_____ )
CDI, INC. and MENARDS, INC.,              )
          Third Party Plaintiffs,                  )
                                                       )
        vs.                                              )
                                                       )
REDDINGER CONSTRUCTORS, INC.,       )
          Third-Party Defendant. )

**ENTRY ON FABCON, INC.'S and FABCON, LLC'S MOTION FOR SUMMARY
JUDGMENT**

This case arises out of a partial roof collapse during construction at a new Menard,

Inc. retail store ("Menard") in Princeton, Indiana.  Plaintiff alleges that the roof

membrane did not have adequate drainage, and that, after a heavy rain, the roof collapsed

from the weight of the water.  Plaintiff was below the roof at the time of the collapse and

suffered severe physical injuries, including paraplegia.

Fabcon, Inc. and Fabcon, LLC ("Fabcon") was the precast concrete fabricator and

was hired by Menard to fabricate and install the precast panels that formed the walls of the Princeton Menard. (Affidavit of Mark Hansen ("Hansen Aff.") ¶ 3). As part of its job duties, it was responsible for cutting the overflow scupper in the precast concrete parapet wall at the northwest corner of the loading dock bump-out – the very area that collapsed. (Affidavit of Bryan Fleck ("Fleck Aff.") ¶ 8; Deposition of Greg Tucker ("Tucker Dep.") at 97-98). The overflow scupper served as a "backup plan" in the event the roof drains were inoperable or clogged. (Deposition of Wayne Linderman at 70-71). At the time of the heavy rain, neither the roof drains nor the overflow scupper were operable, and thus, no water could escape. (Tucker Dep. at 129-30; Carlson Dep. at 67).

Fabcon moves for summary judgment on Plaintiff's negligence claim and on Menard's Cross-Claim for indemnification from Fabcon, LLC. Plaintiff does not oppose Fabcon's motion for summary judgment. Accordingly, Fabcon's motion is **GRANTED** on Plaintiff's Complaint. Menard's opposes Fabcon's motion on its Cross-Claim for Indemnification. For the reasons set forth below, Fabcon's motion for summary judgment on Mendard's Cross-Claim for Indemnification is **GRANTED**.

## II.     Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it is outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Moreover, a material fact is "genuine" "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Id.*

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996). While the moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party may not simply rest on the pleadings, but "must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.*

## III.    Discussion

Menard filed a Cross-Claim against Fabcon, LLC, alleging that it is entitled to contractual indemnification for the Plaintiff's claim against it pursuant to the Precast Construction Contract executed by Fabcon, LLC and Menard, Inc., prior to the Princeton Menard construction project. The indemnification provision in the Fabcon, LLC/Menard's contract provides:

> Contractor shall indemnify and hold harmless OWNER, its agents and its employees from any and all liability, damages, expenses, claims, demands, actions or causes of action, including attorney fees, arising out of the performance of the work hereunder, whether such liability, damages, expenses, claims, demands, actions or causes of action are caused by Contractor, its subcontractors, or their agents or employees, or any persons acting on their behalf.

(Mendard's Ex. A, Article 5). Fabcon was also contractually obligated to obtain

insurance coverage sufficiently broad to cover that indemnity. (*See id*., Article 10).

Menard's claim for indemnification requires Menard to establish that: (1) Fabcon owed Plaintiff a duty to conform its conduct to the standard of care arising out of the relationship with the Plaintiff; (2) Fabcon breached that duty; and (3) that Fabcon's breach proximately caused the Plaintiff's injuries. *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145, 1155 (Ind. Ct. App. 1995).

Generally, an independent contractor only has a duty to use ordinary care both in its work and in the course of performance of its work. *Guy's Concrete, Inc. v. Crawford*, 793 N.E.2d 288, 295 (Ind. Ct. App. 2003). However, if an independent contractor, through its own negligence, creates a dangerous condition during the progress of the work, the independent contractor is liable for the injury of one rightfully on the premises. *Id*. (citing *Rush v. Hunziker*, 24 N.E.2d 931, 933 (Ind. 1940)). Menard argues that there is an issue of fact as to whether Fabcon cut the overflow scupper out of the concrete precast panel prior to the roof membrane installation by NARSI. A reasonable trier of fact, argues Menard, could find "that error to be negligence proximately causing [Plaintiff's] injury," (Mendard's Response at 7), thus entitling Menard to indemnity.

NARSI was hired by Menard to complete the roof installation. (Carlson Dep. at 30; Tucker Dep. at 21). NARSI employees started to install the roof membrane on July 25, 2007. (Tucker Dep. at 91). NARSI was responsible for cutting the rubber roof membrane at the location of the three (3) drains at the loading dock bump-out and for flashing the roof membrane/drain connections. (*Id*. at 9). NARSI was also responsible

for cutting the roof membrane covering the overflow scupper opening to make sure the scupper was not blocked. (Carlson Dep. at 68). Greg Tucker, CDI's Project Foreman, testified that, based on the procession of their work, NARSI would not have reached the loading dock area to install the roof membrane in the loading dock area as of July 26, 2007. (*Id*. at 91-93). July 26, 2007, is a critical date, as it is the date that Fabcon alleges it cut the scupper in the precast concrete wall in the loading dock area.

As of the date of the roof collapse, September 26, 2007, the roof membrane covering the three (3) roof drains in the loading dock area had not been cut to the requisite size. (Tucker Dep. at 129-30; Carlson Dep. at 67). That fact is undisputed. As will be seen below, Fabcon and Menard dispute whether the overflow scupper was cut before NARSI laid the roof membrane in that area. James Carlson ("Carlson"), Menard Assistant Manager for Store Planning and Construction, testified that NARSI left the jobsite on August 4, 2007, seven weeks before the roof collapse. (Carlson Dep. at 20).

According to J. Francisco Reyes ("Reyes"), superintendent of NARSI, at the time NARSI left the jobsite, the roof was approximately 85% complete. (Deposition of J. Francisco Reyes ("Reyes Dep.") at 193-94). When asked how he knew the scupper was not cut before NARSI left the jobsite, Reyes testified that he was "not sure," but that he "asked [his] helpers in [his] group, and they said that there was no hole cut for that." (*Id*. at 110). Upon further questioning, Reyes testified that his brother, Manuel, told him (after NARSI had left the jobsite) that the scupper was not cut before NARSI left the jobsite. (*Id*. at 121, 167-68). When Reyes was later asked if he recalled whether the

5

scupper was cut before NARSI left the jobsite, or whether he obtained this information

based only upon what others told him, Reyes responded that he "did the first inspection,"

and remembers that "the hole was not cut." (Reyes Dep. at 121).

Bryan Fleck, Fabcon, LLC's project manager for the Princeton Menard, produced

a work progress record that establishes that "the overflow scupper at the loading dock

location was cut out of the precast panel by a Fabcon, LLC, employee on July 26, 2007."

(Fleck Aff. ¶ 8 and Ex. 1). Tucker testified that Fabcon must have cut the overflow

scupper out of the concrete precast panel prior to the roof membrane installation because,

had the scupper been cut after the roof membrane was laid, there would have been saw

cuts in the roof membrane in the location of the scupper opening, and there were no saw

cuts in the roof membrane based on his post-collapse inspection. (Tucker Dep. at 87-89).

Further, Carlson testified that the scupper opening in the precast concrete parapet wall

had been cut prior to the roof membrane installation, and nothing prevented NARSI from

cutting the membrane out of the overflow scupper opening during its roof installation.

(Carlson Dep. at 153-54). Even Menard's own retained expert, Chris Kneppers

("Kneppers"), noted in his expert report that it was "clear that the overflow scupper

opening in the precast concrete wall was in place at the time of the collapse." (Fabcon's

Reply, Ex. A).

The court finds that the admissible evidence unequivocally establishes that Fabcon

cut the overflow scupper before NARSI left the jobsite. Although Reyes testified to the

contrary, his testimony is unreliable for two principal reasons: (1) Reyes' reliance on

what other's told him constitutes inadmissible hearsay; and (2) there is no indication in the record as to when Reyes' "first inspection" occurred. Accordingly, the court finds that Fabcon adequately discharged its obligations under its contract with Menards, and, consequently, cannot be liable to the Plaintiff for creating a dangerous condition that led to the roof collapse.

Menard argues in the alternative that if the court grants Fabcon's motion, Menard be granted leave to name Fabcon as a nonparty. A "nonparty" is defined as "a party who caused or contributed to cause the alleged injury, death or damage to property but who has not been joined in the action as a defendant." Ind. Code § 34-6-2-88. The admissible evidence reflects that Fabcon did not cause or contribute to the Plaintiff's injuries. Accordingly, the court **DENIES** Menard's request.

There is no evidence in the record to support the inference that Fabcon created, nor was it responsible for creating, any dangerous condition on the property that led to the roof collapse. Accordingly, Fabcon's Motion for Summary Judgment (Docket # 180) is **GRANTED**, and Menard's request for leave to name Fabcon as a non-party is **DENIED**.


**SO ORDERED** this 29th day of July 2011.


RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


7

Electronic Copies to:

Gerald F. Allega
STATHAM ALLEGA JESSEN & RUDISILL
saj@statham-aj.com

Bradley A. Bough
WRIGHT SHAGLEY & LOWERY
bbough@wslfirm.com

Jake A. Cilek
THE HUNT LAW GROUP LLC
jcilek@hunt-lawgroup.com

Kathleen A. Clark
DAWSON & CLARK, P.C.
kclark@dawson-clark.com

Aimee Rivera Cole
SMITH FISHER MAAS & HOWARD
arivera@smithfisher.com

Donald H. Dawson Jr
DAWSON & CLARK, P.C.
ddawson@dawson-clark.com

James L. Fischer Jr.
BOEHL STOPHER & GRAVES, LLP
jfischer@bsg-in.com

Danny E. Glass
FINE & HATFIELD
deg@fine-hatfield.com

Jeffrey W. Henning
RUDOLPH FINE PORTER & JOHNSON, LLP
jwh@rfpj.com

Brian J. Hunt
THE HUNT LAW GROUP LLC
bhunt@hunt-lawgroup.com

John J. Kreighbaum
FINE & HATFIELD
jjk@fine-hatfield.com

Marcum Jarvis Lloyd
SMITH FISHER MAAS & HOWARD P.C.
mlloyd@smithfisher.com

Rebecca Jean Maas
SMITH FISHER MAAS & HOWARD
rmaas@smithfisher.com

Curtis Paul Moutardier
BOEHL STOPHER & GRAVES LLP
cmoutardier@bsg-in.com

William Scott Trench
THE HUNT LAW GROUP LLC
strench@hunt-lawgroup.com

Scott Lee Tyler
Waters, Tyler, Scott, Hofmann & Doane, LLC
styler@wtshdlaw.com

Robert L. Wright
WRIGHT SHAGLEY & LOWERY, P.C.
rwright@wslfirm.com

Copy to:

Lindsay A. Watson
THE HUNT LAW GROUP, LLC
20 N. Wacker Drive, Suite 1711
Chicago, IL 60606